And we'll take the next case before we take a break. Sydney Silverman v. Sam's West. And Scott Wagner is here for the appellate. Silverman, Jess Askew III is here for Sam's West. And, Mr. Wagner, you may begin when you're ready. May it please the court. I am Scott Wagner, representing appellant Mr. Sydney Silverman in this matter, and I hope to discuss this morning, one, why the district court legally erred in entering summary judgment against Mr. Silverman by either, A, disregarding his state of mind as part of the analysis, or B, improperly making a fact determination as to Mr. Silverman's state of mind, negligent on the one hand, or reckless on the other, or intentional on a third under Florida's corporate bail-piercing laws. Why is state of mind, why is that even relevant to determine whether or not Mr. Silverman used the corporate form project? I don't see that that's an element of the test to prove Mr. Silverman. Because, Your Honor, if you do not read element two of Florida's corporate bail-piercing laws to include state of mind, then you would be effectively eliminating element two and folding it in or conflating it with element one. Well, element two, it says the corporate form must have been used fraudulently or for an improper purpose. Correct, Your Honor. And if you violate the rule of priorities, that's an improper purpose. Where's intent? Where's intent come into play here? Yes, Your Honor.  What was the purpose of your use of this? Was it intentional? Was it negligent? Was it reckless? We don't know in this case because the court refused to make that analysis, but if you went back, for instance, if the court accepted the district court's ruling or accepted the fact that state of mind was not part of element two, as many of the cases that we've specifically pointed to do say, if you accepted that it was not, then you would effectively eliminate element two from the entire analysis. You would render it meaningless because once you did the analysis under alter ego, under element one, and you found that they had a foot fault on this statute, you would then, by virtue of finding that they had abrogated the statute, you would just leap to element three and just skip completely over element two in this particular case. The Florida law of priorities says creditors take priority over shareholders when a corporation is dissolved. Right? That is true, Your Honor. If creditors did not take priority over shareholders when this subchapter S corporation was resolved, then it seems like the second element of the test to pierce the corporate veil, it was used, the corporate form was used for an improper purpose, period. That is not what the term improper purpose under Florida veil piercing laws means. You got a case that says that? You got a case? I do, Your Honor. Not only . . . It says the state of mind or intent should be taken into consideration? I have several cases, Your Honor, cases that specifically state that negligent or reckless behavior on the one hand is not enough to pierce the corporate veil. Only intentional acts are capable, and those cases are what we have cited in our briefings at Henry Hillsborough Holding. That's a middle district case from 1994. The John Daly Enterprises case is a southern district case from Florida in 2009. The Beach Community Bank case is a northern district of Florida case. The problem is that the second element says the corporate form must have been used fraudulently or for an improper purpose. And the question is, what under Florida veil piercing laws does improper purpose mean? Does it merely mean that you have breached some level of statute? Or does it mean that you intentionally used the corporate form to mislead or defraud creditors? And in this particular case . . . You have a case that says for an improper purpose requires that you intended to use the corporate form for an improper purpose? Yes, Your Honor. The cases I just cited, and also I'd like to draw the court's attention to, we have a Flooring Depot case, which is a Fourth Circuit Florida DCA case from 2021. At the end of February of this year, they came out with Flooring Depot 2, which is a case about another issue, but it's the same parties. And the court doubles down on the holding, and it specifically says that the lesson of monies for personal expenses, which is what's at issue here, is categorically not enough to pierce the corporate veil. It's not just that that would be improper purpose. That's true in the sense of when you're doing the analysis for alter ego, but that is not what improper purpose means under the second element. How does that square with the Fifth DCA's Walton decision? So I think that the Fifth DCA Walton decision goes into a series of transactions where it is clear to me that they are intentionally doing it. And I think it's important to note that the cases we have cited are very specific. They are on point. They clearly say specifically negligent or recklessness on the one hand, not enough. Intentional on the other hand, yes. I know that's how the district courts have interpreted it, and it seems like the Hillsborough case is sort of the foundation point for a lot of the later ones that you cite. But I want to go back to Dania, because Dania extensively cites to Advertex. How does that square with what the Fourth DCA said, and I think you accurately quoted in the Foreign Depot cases? I think it's very important, and I'm glad the court has drawn this distinction. Aqueducts was not a case at summary judgment or at trial. It's true. It was a rule-nessy case. It was a rule-to-show cause. It was, do you have enough, and we have to make a preliminary finding prior to issuing a rule-to-show cause. And so the procedure and the posture of that case is materially different than the other cases that flow from. I know in Molyneux, we said, you have accurately quoted the sort of what I'll call the second element, the one you said, you've 100% quoted our case law on that. So there's, what I'm about to say doesn't dispute anything that you've read or said. But in Dania, after the long quotes from Advertex that you have accurately described, we say this, I'm sorry, the Florida Supreme Court says this. We conclude that the district court decision directly and expressly conflicts with decisions of this court, the Supreme Court, which hold that the corporate veil may not be pierced absent a showing of improper conduct. When did purpose get sort of slid in there? Because those things are different. I'm sympathetic to your point that purpose is sort of, by its nature, intent-driven, but conduct is a little less intent-driven and more focused on the act itself. That's true. But if you look at Sykes and you go through Sykes, one of the things that the courts cover I've read it many times now. I imagine you have, Your Honor. And one of the things that the courts following Sykes say down the road is that one of the things Sykes did not do was define improper conduct. But if you look at the Florida Supreme Court cases, going back to the... Did they not cite Advertex for examples of what improper conduct could be? No, it's cited Adver... Principle. I think Conant v. Blount has been cited. I think there are other cases that this court has cited. The Johnson case in 1998 here in the 11th Circuit, that's 162 Fed 3rd 1290, cites to Continental Distilling. That's a 1949 Florida Supreme Court case and Mayer. And those cases, for instance, Mayer, which is a 1935 Florida Supreme Court case, the genesis of that is purpose. And it is not just, by the way, whether a particular transaction... And this is where I think there's a lot of conflation going on. It's not whether a particular transaction, intentional or otherwise, negligent or whatnot, constitutes impermissible or improper purpose. What's important is whether the corporate form itself was driven or used as a vehicle for this improper purpose. Like for instance, the appellees cite Eckhart. They hug, I think, fairly tightly to Eckhart. It is clear in that particular case that the defendant was engaged in a pattern. Not a one time, but a pattern. He would start a company called Arnold's. We're not bound by Eckhart. It was an unpublished decision. It's not binding on the court. I agree. I was just jaundiced. I totally agree with that and I'm merely trying to point out that there's a distinction between I'm not relying on Eckhart, but the appellees seem to be. The other cases also draw a distinction. I'll probably bring a lot of that in our reply here. But to your Honor's points and questions today, the question is, is there a state of mind analysis that needs to go into the second prong of the Pierce the Corporate Bail Test? We would say yes. Thank you. All right. Thank you, counsel. Mr. Askew. May it please the court, I'm Jess Askew here for Sam's West. With me at counsel table is co-counsel Caleb Sugg. Judge Cohn and Judge Strauss were absolutely correct that there is no genuine dispute of whether Mr. Silverman abused the corporate form to the injury of my client. Mr. Silverman admits he took the money. What I understand is his argument here is that he didn't know that he was going to be found to have violated the alter ego liability principles of the court of law. He was acting in a reckless manner. He's arguing that he needs to have a subjective intent. That's my understanding of his argument. That's true. But what I appreciate his argument to be is if I had known that I'd have to be called on to account for alter ego liability, I wouldn't have done it. It's completely inconsistent with his entire rationale. That's quite his argument. His argument is that the way we accounted, not just when this came up, but from the beginning of the corporation itself, I think he says starting from year two or year three when money started to be distributed, when they started to make money. From that point, my accountant, for better or for worse, although in the same account, had a ledger on the one hand saying this was my personal money that was distributed to me but held by the company, and I just thought that was okay because it's an S-corp and passes through, and this was the corporate money. And I have evidence that I've submitted which shows that there are these T-charts going all the way back from to 94, 95, 96, right? That is the argument. And he also says the reason I left my so-called personal money in the corporation was to help it when it needed extra money to pay bills. Well, look what happens here. When my client is owed $2.95 million, Mr. Silverman is pulling out money from the corporate account for himself for personal expenses and not paying my client. That might be true. And there's no doubt that you have evidence on your side, but that's not the question for us. The question for us is, was there a genuine issue of material fact on the purpose? And I guess my question is, if he has sworn, which he has, that that was the financial arrangement which he understood, if he has submitted evidence to support that fact, then how does that not create a genuine issue of material fact that at least his purpose that he thought was, I think as Judge Lugo has said, reckless, as opposed to a knowing and thwarting of your client? That's the difference in prong two of the alter ego liability test in Florida between improper purpose and fraud. Your Honor wrote an opinion, the J or P and S and company. I know the case. Yes. That was fraud, clear, no doubt about it. Here, Mr. Silverman did not make statements that we alleged were fraud. We didn't raise any question about fraud. I think fraud could have been found, but that may have required- Why does illegal purpose not, sorry to interrupt, why does illegal purpose, though, not incorporate a state of mind? So I understand you're not alleging fraud here. Improper purpose is violating the rule that creditors must be paid before shareholders can take distributions, violating the rule that dissolved corporations must only gather their assets and pay creditors and then distribute money to- That is what happened. Yes. How could we say that was his purpose when his belief, wrong, but his belief was that the money was his and his silo and that was not corporate money? In other words, the corporation didn't have any money by then. It was zero on that side of the ledger because the deal had fallen apart and no new revenue was coming in. So there was nothing for the corporation to pay. Again, whether a jury would buy that is a separate story, or whether a judge would buy that is a separate story, but why is that not a genuine issue of material fact on whether his purpose was to violate those statutes? The improper purpose was to pay himself when creditors were not paid. That's the improper purpose and that violates the priority statute, the dissolution statute. But that presupposes that the money is the corporations and his point is the way we accounted, this money was mine. It was not the corporation's. Again, I know it was in the corporate bank account. I understand technically under Florida law it was. He is saying my belief was it was mine and so I didn't do that. I didn't violate the statute, at least that was not my intent or purpose. But he did necessarily. He took the money from the corporation, distributed it to himself when creditors were unpaid. I guess what I'm saying is a mistake of law, which is what this seems to be. I mistook the legal implications that money in the bank account of the corporation is in fact the corporations, no matter how we account for it. Is that mistake of law necessarily an illegal purpose or must you prove some intent requirement beyond that? It's an improper purpose and it's not a mistake of law. This was deliberate, as Judge Strauss said, this was deliberate, repeated, widespread and long-ranging payment of personal expenses using WPP's funds. Can I ask you a question, though, because there's a case from I think the third DCA, Siegel versus Forastero from 2021, where I think Judge Scales says, to pierce the corporate veil, the aggrieved creditor must show its injury was caused by the use of the corporation to, quote, mislead creditors or to perpetrate a fraud upon them, which is quoting Dania Hiley from the Florida Supreme Court. The question is, and you can correct me if I'm wrong, my understanding is that Mr. Silverman said, this is how he practiced, this is what he did with the business from the beginning, so where exactly, is there any evidence that this was done to mislead the creditors or to perpetrate a fraud upon your client? Yes, cautioning, though, that we did not take that prong and the quote that you just read from that case does not take into account the improper purpose prong of the second element of the Florida law, but what Mr. But the fourth DCA cases seem to suggest on the illegal purpose part, at least as to both, the whole prong, that paying personal expenses from corporate money in any context doesn't seem to be enough to meet the second element. Correct. Here's what it is. You can have an alter ego. That's prong one. Right. Mm-hmm. Right. You can pay the creditors. That's prong two. There's no injury to the creditors. If Mr. Silverman had paid Sam's and paid himself and distributed money to himself, we wouldn't be here. But Foreign Depot seems to suggest that payment to himself alone from money that should have gone to the creditors is not sufficient to meet the second prong. Am I wrong or am I right in reading that? It gets down to what is meant by the improper purpose. And Mr. Silverman knew that he owed money to my client. He knew that in 2016. He knew that in 2018 when he filed suit on behalf or caused his company to file suit even after he had ceased operations through that company. So he stopped operating WPP in August of 2018 and then filed suit against my client in December of 2018 claiming all sorts of torts that by the end of that case he had dispensed with. You violate the Florida rule of priorities without intending to do so? I believe blowing through the stop sign that Florida corporate law creates is an improper purpose. Yes. So if you pay, if you've got a subchapter S corporation and you're dissolving it and you pay shareholders above creditors, you pay shareholders first, but you're not aware of the Florida rule of priorities and you're not intending to defraud the creditors, that's still an improper purpose. That's your argument. That is operating a corporation for an improper purpose, yes, and the reason for that is corporations must pay their creditors before they pay their shareholders. So let's imagine, okay, so we're at trial now. Someone has alleged that they violated the statute. Let's say it was brought by the Florida Division of Corporations against someone for violating that. You're telling me it wouldn't be a defense to say I consulted my lawyer and my lawyer told me to accounting as I did would not violate the unwinding provisions of dissolving an S corporation? That would not be a defense? No. The statute is very clear that for a dissolved corporation, you pay or make provision to pay creditors. Then what's left over goes to shareholders. Let me go back to the flooring. Can I go back to Flooring Depot for a second? So here's what I understand Flooring Depot to have held. There what the court said is that the defendant there in that case, I'm sorry, the entity in that case, or the individual in that case, quote, commingled his business and personal assets and use business monies to make personal purchases. These allegations without more failed to meet any of the three factors, including, quote, that there was no evidence that the individual used the company for an improper purpose. Correct. How is that? I'm having trouble getting around that. That gets back to the point. Now, of course, we have alter ego established as a matter of law. Agree. No one is disputing that. The improper purpose is going beyond commingling personal and corporate assets, going beyond paying personal expenses with corporate assets. It's taking money from the corporation and not paying the creditor. But that happened in Flooring Depot. I mean, there's no dispute that they weren't in front of the court because the creditors got all their money that they would know no one would ever be in court if that were the case. Bingo. If Mr. Silverman had simply paid my client, we wouldn't be here. I understand that. I understand that. But that's true in Flooring Depot. In every one of these cases, there's there's an aggrieved party. That's why we're here. If you weren't aggrieved, you wouldn't have standing to be here. True. So that's always going to be the case. So my question is where that's always the case, plus commingling, plus paying your own as opposed to paying the creditors. The fourth D.C.A. seems to be suggesting whether it's right or wrong is a different point. Seems to be suggesting that's not enough, right? Perhaps. That is inconsistent with the clear statement in the Dania Hylai case. So that gets to an interesting question, which is and it's one I'm interested in hearing from your opposing counsel, which is if there is some tension between Dania, Dania Hylai and a later decision of a district court, what is our obligation as a court sort of interpreting state law? And as I understand it, it's deferred to the interpretation of the Supreme Court, even where there might be an intermediary or lower court that's inconsistent. Well, two of you were on the Supreme Court. I believe that's exactly the answer. And Dania holds and prevails. And if we have intermediate appellate decisions that are inconsistent or don't completely embrace the elements of alter ego liability, then we rely on what the Supreme Court says. And that's exactly what the courts below did here. And in addition, on the Flooring Depot, you didn't have the element of paying distributions to shareholders when the corporation was insolvent because its debts exceeded its assets. You didn't have the element of paying the shareholder distributions after dissolution. We have statutory violations. And I believe that Dania court in discussing all of the previous alter ego liability law in Florida and resolving it in 1984, I believe, makes the statement that actions that violate statutes are improper. It's there in that case. And that's exactly what we have here. The bottom line is state of mind is not material to the improper purpose element, especially on the facts before you. That's why it's not an issue for a jury and it's not open to any further exploration. Mr. Silverman took the money. And here's where I keep going in my head. Okay. So he says he really didn't mean to be using the corporation for an improper purpose. Well now he knows. So why doesn't he come back and say, gee, I really made a mistake. I want to set it right. Let me put the money back in WPP and pay Sam's. Let me pay Sam's. He paid Wolfgang Puck personally, as he said in his deposition, before we got summary judgment against WPP. He doesn't do that. He wasn't the sole shareholder, was he? He was. He was the sole shareholder. Yes. So he paid himself first before he paid the creditors. Absolutely. $3.2 million according to our expert. It's kind of shocking to see the extent of the personal expenditures in this case. And it's in the record. All right. Unless there are any further questions, I appreciate the opportunity to appear before you. We would ask that the, I think, well-reasoned and correct decisions below be affirmed. Thank you. Thank you. Mr. Wagner, you've reserved some time for rebuttal. So his argument, as I understand it, is I did not know that I had to pay the creditors first before I paid the shareholders. And if that's the case, then the elements to meet piercing the corporate bail are not met. Is that Mr. Silverman's argument? Mr. Silverman's case, as it's been represented by two of your honors in this panel, is that he engaged in a practice for over 25 years on the advice of his CFO, delineating certain monies for himself, certain monies for the company. Frankly, if that money wasn't there, it would never be there. He would have taken it out. It would have never gone back in. There would be no money to pay any creditors at that point. But the point for this particular part is, and this is what continues to be ignored. Is the dispute that he violated the rule of priorities? Oh, I think that he violated. It's clear that he violated the rule of priorities. He was engaged in not. His argument is, well, I didn't think I was violating it. If the court goes, well, yes, I mean, that's that. He certainly did not think he certainly had no intent. I think the court has characterized it as perhaps reckless. It could be found negligent. But that's not for the panel. It's not for Scott Wagner or counsel here or for the lower court. It's for a jury to decide. A jury could decide that he clearly violated the Florida rule of priorities, but he didn't mean to do it. So therefore, you can't pierce the corporate veil here. Correct. Now, that that now. Now, Your Honor, that could be considered under element one, which is alter ego. May I ask you a question? It seems to me, then, that what you're really arguing is the improper purpose, in essence, would have to be fraudulent. Not necessarily fraudulent in terms of proving fraud. So what would have to be? There has to be a level of intent that you intentionally use. What would the intent be? Because the intent can either be negligent, it could be reckless, it could be fraudulent. So it has to be something. So what would be the improper purpose that would be the that would subject you in terms of intent to be able to pierce the corporate veil under your theory? So that you were using it for an intentional purpose to defraud or to mislead creditors, which has not been alleged, and there's no evidence of that in this particular case. And one of the things that's been. Again, it seems to me like you really are arguing that you would have to be have a fraudulent intent. It seems to me that reckless would be enough to be reckless if you intended to mislead the creditors. Well, I think it would have to be intentional. And so like for an instance, an intentional tort, as opposed to negligence or gross negligence. I'm asking these questions because if we write an opinion, it has to we have to be able to explain to litigants after you what the what the law is. So I simply believe I don't know if it's necessarily fraudulent intent, but it is intent designed to either defraud. There is no case in Florida that talks about this this general area of the law in terms of what the intent would be for purposes of improper conduct. So there are several cases in the corporate bail. So there are several federal district court cases across talking about state of Florida case. Yeah. So I think there are other cases in Florida that talk about negligent or reckless behavior. On the one hand, does not constitute improper conduct sufficient to pierce the corporate bail. And then there are cases that talk about intentional. And one of the things that I think is important for this particular and I will note that it's come up here. It's clear here, though, that Sam's is not alleging that the corporate form was used fraudulently. What they're alleging is that the corporate form was used for an improper purpose. And so that second element is separated by the word or they're not relying on fraud. They're relying on clearly just an improper purpose. Is that correct? Improper purpose is a term of art under the second element. If the court does not accept that reading, that is a term of art that means something more than merely violating a corporate statute, then there is you've you've rendered that second prong completely meaningless because the first prong, the alter ego prong is where evidence of, hey, you violated a corporate statute. You commingled funds. You did this. And the court then finds, OK, there's enough here that you have an alter ego. Now, this case is a little different because it parsed the two found the alter ego on a collateral estoppel issue and then didn't do that analysis afterwards. I have to tell you, your honors, I think that's where this sort of break came in, because that analysis, which is really geared towards element one. Is not element to otherwise, for instance, your honor, you would find that a corporation violated a corporate statute and commingled funds, not intentionally, but maybe negligently or even recklessly. And I think the court could find that on alter ego prong one, that's enough to and sufficient to find that an individual shareholder or shareholders were the alter ego of the corporation. But that is not where the analysis ends. And we can't skip over to element three. We still have to deal with element two. And if element two is going to have any meaning, fraudulent, improper purpose, it has to be under the case law, which specifically talks about state of mind. Was it intentional? Are you designed you look at these cases that they've cited Burmeal? I'm sorry, I'm a little bit over if the finish, but if you look at the cases that were cited by the by Sam's Club, the Burmeal case, the Eckhart case, the Venn case, which is a Ponzi scheme. Those cases which they rely on, those are clear, intentional acts by these defendants. In those cases, the cases we rely on specifically say you can find intent and that's an element, but negligent, negligent and reckless. That is not enough. All right. I think we have your argument. Thank you. Thank you, Your Honors. Court will be in recess for 15 minutes.